GEORGIA LAND & SECURITIES CO. *v.* CITIZENS BANK.

Application of the principle laid down in *First National Bank of Gainesville* v. *Pounds*, 163 *Ga.* 551, headnote 2, to the issues involved in this case under the pleadings and evidence, required the judgment refusing the injunction sought by the plaintiff.

No. 5706. SEPTEMBER 23, 1927.

Petition for injunction. Before Judge W. E. Thomas. Colquitt superior court. October 15, 1926.

*Clark & Mackall* and *L. L. Moore* for plaintiff.

ATKINSON, J. On December 31, 1924, the Georgia Land & Securities Company brought its petition for injunction against the Citizens Bank. It is unnecessary to set forth at length the allegations of this petition. In addition to other relief, the petitioner prayed that the defendant be restrained from selling or attempting to sell or otherwise dispose of the land involved in the controversy ; that a mortgage from J. F. West to J. M. Gay, dated

---

Mortgages, 41 C. J. p. 509, n. 24; p. 558, n. 41; p. 672, n. 79; p. 673, n. 85; p. 684, n. 88.

August 13, 1918 (the real date being February 13, 1918), convey-- ing this land, be delivered up and canceled and declared to be no lien; and that title to the property be declared to be in the plaintiff. The. allegations and prayers raise the question as to whether or not the lien of the mortgage from West to Gay, and held by the bank, took priority over a security deed executed by West to the plaintiff. By agreement the case was heard by the judge, without intervention of a jury, upon the following facts:.

On February 8, 1918, J. M. Gay executed a warranty deed conveying certain land to J. F. West. On February 13, 1918, West executed a mortgage to Gay, covering the land, to secure an indebtedness of $986.96, evidenced by five promissory notes. The notes were signed by West and payable to J. M. Gay or order. The mortgage was duly recorded on February 14, 1918. Gay discounted certain of the notes with the Citizens Bank, and indorsed and delivered all of them to that bank as security for the indebtedness; and at the same time in connection therewith he delivered to the bank the mortgage, without transfer or written assignment, to be held by the defendant bank as security for the payment of the notes secured by it. On January 8, 1921, Gay renewed a portion of his indebtedness to the bank, and executed to it a promissory note for $350, due October 1, 1921, and containing the following recital: "I having deposited herewith as collateral security notes and mortgage [of] John F. West, total $385.85, hereto attached, with authority to sell same, or any collaterals substituted for or added to the above, without notice, either at public or private sale, or otherwise, at the option of the said holder or holders hereof, on the non-performance of this promise, said holder or holders applying the net proceeds to the payment of this note and accounting to me for the surplus, if any." Attached to the renewal note were the original mortgage from West to Gay, which had already been delivered and was in the possession of the bank, and two of the notes thereby secured, to wit, the note for $200 due November 1, 1920, and the note for $186.85 due November 1, 1922; and the bank has ever since that time held and now holds the two notes aggregating $386.85, as well as the renewal note and the mortgage originally delivered to and deposited with the bank as security in 1918. No written transfer or assignment was then entered or placed on the mortgage, and no separate or distinct

written transfer was taken until the execution of the renewal note for $350, on January 8, 1921. No written transfer or assignment of the mortgage to the bank was entered or placed on the mortgage itself until March 6, 1922, when the bank discovered that the mortgage did not have an entry of transfer or assignment, and then had entered on it a written transfer dated March 6, 1922. Neither the transfer of the mortgage contained in the renewal note of January 9, 1921, nor the separate transfer dated March 6, 1922, was recorded, and the plaintiff had no actual knowledge of either transfer prior to the advertising of the land for sale by the bank under the mortgage.

On October 14, 1919, J. F. West executed to the plaintiff a deed to secure a loan of $3500, conveying the land in question. On July 16, 1921, West executed a warranty deed to J. M. Gay conveying all of his interest in the land, and this deed stipulated that it was subject to said loan deed to the plaintiff, which Gay assumed and agreed to pay off as a part of the consideration. The written assignment or transfer of the mortgage to the bank, dated March 6, 1922, was not recorded at the time the bank advertised the land under the power of sale contained in the mortgage and at the time of the commencement of this suit. West having defaulted in the payment of the loan secured by his deed of October 14, 1919, the plaintiff proceeded to advertise and sell the land in compliance with the terms of the power contained in the security deed, at which sale the plaintiff was the purchaser, on June 20, 1923. It afterward conveyed the land to Askew and Mather; and they, being unable to pay off the original loan of $3500, which they had assumed, and the purchase-price of the land, quitclaimed all their interests to the plaintiff.

J. F. West testified, for the plaintiff: "On August 20, 1917, J. M. Gay executed to me a bond for title to this 100 acres of land, and then on February 8, 1918, made me a warranty deed to same. On February 13, 1918, I executed a mortgage to Gay to secure $986.85, evidenced by notes dated August 1, 1917, and due August 1st in each of the years 1918, 1919, 1920, and 1921. On August 24, 1919, I executed a security deed to Georgia Land & Securities Company to secure $3000, covering this land. On July 16, 1921, I reconveyed said property by warranty deed to Gay for the consideration of $3500, and recited that the conveyance was subject

to the security deed to Georgia Land & Securities Company. I thought that Gay was the owner and holder of the mortgage I made him on February 13, 1918; and it was understood between Gay and myself that in making my warranty deed to him to this property on July 16, 1921, this mortgage was to be considered settled in full. It was understood that mortgage was to have been canceled at that time, but for some reason it was not accessible, and we overlooked later having it canceled. Mr. Gay under our trade was to take up the loan due the Georgia Land & Securities Company, cancel the mortgage I gave him, and pay me $100 in cash besides. He has not yet paid the $100."

The judge refused an injunction, and decided the issues in favor of the defendant. The plaintiff excepted to this judgment; but we are of the opinion that the judgment was required under the pleadings and the evidence in the case. It is provided by statute that "The transfer of notes secured by a mortgage or otherwise conveys to the transferee the benefit of the security." Civil Code (1910), § 4276. In the case of *Cross* v. *Citizens Bank,* 160 *Ga.* 647 (8) (128 S. E. 898), it was said: "The foregoing refers to implied transmission of title to the security, but does not purport to exclude transmission by express written assignment of the notes and security, or to qualify the effect of such written assignment." See also *Carter* v. *Johnson,* 156 *Ga.* 207 (119 S. E. 22) ; *Carlton* v. *Reeves,* 157 *Ga.* 602 (122 S. E. 320). The mortgage executed by West to Gay on February 13, 1918, deposited with the bank as security for the payment of the notes to secure which the mortgage had been executed, was duly recorded, and the creditor bank which held this mortgage under these circumstances as collateral security took the benefit of the security, and would have taken it even if it had not been actually delivered to it. The plaintiff alleges that it had no notice of the transfer of this mortgage to the bank. In this respect its contention is supported by the evidence agreed upon. Nevertheless it had constructive notice of the record of the mortgage from West to Gay of February 13, 1918, and knew that under the law the holder of the notes secured by that mortgage took the benefit of the mortgage to secure the payment of the notes. The reconveyance of the land to Gay by West did not extinguish the mortgage; and the plaintiff, knowing that the mortgage was outstanding, was put upon inquiry as to

whether or not Gay was still the holder of the mortgage and the notes secured thereby, or whether the notes were in the hands of some other bona fide holder or owner. The bank, the bona fide holder of the notes, does not lose the benefit of the security which the law in express terms gives to it; and the judge properly took this view of the case and held that the mortgage in the hands of the defendant is a valid and enforceable lien, and, as to the plaintiff, it is a prior lien to the plaintiff's security deed and the deed under its foreclosure sale; and consequently properly held that the plaintiff was not entitled to the injunction sought.

*Judgment affirmed. All the Justices concur, except Hill, J., absent.*